AARON D. FORD
  Attorney General
DOUGLAS R. RANDS, Bar No. 3572
  Senior Deputy Attorney General
State of Nevada
100 N. Carson Street
Carson City, NV  89701-4717
Tel:  (775) 684-1150
E-mail:  drands@ag.nv.gov

*Attorneys for Kerry McCullah and*
*Candis Rambur (formerly known as Candis Lucas)*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN DAVID PAMPLIN,<br><br>            Plaintiff,<br><br>vs.<br><br>C. LUCAS, et al.<br><br>            Defendants. | Case No.  3:20-cv-00111-MMD-CLB<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendants, Kerry McCullah and Candis Rambur (formerly known as Candis Lucas), by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, and Douglas R. Rands, Senior Deputy Attorney General, hereby submit their Motion for Summary Judgment.  This motion is based on the following Memorandum of Points and Authorities, the attached exhibits and declarations, and all papers and pleadings on file in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

    Plaintiff, John David Pamplin, (Plaintiff) is an inmate under the custody of the Nevada Department of Corrections, and currently housed in the Warm Springs Correctional Center (WSCC).

    In his Complaint, Plaintiff sues multiple Defendants for events that allegedly took place while Plaintiff was incarcerated at Warm Springs Correctional Center ("WSCC").  (ECF No. 1-1 at 1.) The Court found that Plaintiff stated a colorable Eighth Amendment claim against Defendants C. Lucas and K. McCullah.  The Court stated that, liberally construed, the Complaint alleges facts

1

sufficient to show that C. Lucas and K. McCullah knew that Plaintiff had a drop foot, hip, and back injuries that caused Plaintiff pain when he had to climb up and down the hill but unreasonably and deliberately chose not to transfer Plaintiff to address the problem and baselessly claimed that the yard was "barrier free," causing Plaintiff prolonged pain. (ECF No. 2 at 7-8).

In his Complaint, Pamplin alleges that he complained to C. Lucas and K. McCullah that his housing situation required him to walk up and down the hill, and that he was having difficulties walking, and was experiencing pain due to his medical condition. He further claims that C. Lucas and K. McCullah denied his request to be accommodated through transfer to a flat yard, and both of them claimed that the yard where he was housed was "barrier free" even though Plaintiff had informed them of the problems posed by the hill. (Id. at 4, 5, 12-10 17.) In screening the Court found that the Complaint adequately alleged that Defendants C. Lucas and K. McCullah deliberately refused to accommodate Plaintiff's disability-related mobility needs and his ADA claim was allowed to proceed against C. Lucas and K. McCullah. (ECF No. 2 at 6). Therefore, Pamplin was allowed to proceed on 2 claims against 2 Defendants.

## II.   STATEMENT OF UNDISPUTED FACTS

On September 12, 2018, Pamplin was classified, pursuant to a settlement agreement in a prior matter, to be transferred from Ely State Prison, (ESP) to Warm Springs Correctional Center. (WSCC). (Exhibit 1)  Prior to his move, he was classified, by medical, to be restricted to a barrier free institution. (Exhibit 2).  The only limitation is that he could not be housed at High Desert State Prison. (Id.)  Upon arrival at WSCC, Plaintiff kited requesting transfer to a flat yard. (Exhibit 3)  In his kite, he specified that OMD (Offender Management Division) classified him to WSCC.  (Id.) Defendants McCullah and Lucas had nothing to do with the transfer.

The Offender Management Division is the department who is tasked with determining placement of inmates within the Nevada Department of Corrections. (NDOC).  Nurses at the institution have no authority to make transfers. (Declaration of Powers).  Defendants Lucas (now known as Rambur) and McCullah were nurses who have no authority to accommodate Pamplin by a transfer to a flat yard. (Declaration of McCullah, Rambur).  WSCC is not a hilly yard. (Declaration of Olsen).  Therefore, there is no accommodation necessary.

On January 24, 2019, Pamplin was seen by medical in response to his kite. (Exhibit 4). The medical officer evaluated Pamplin, and ordered medication and x-rays, along with an evaluation with Ortho-pro regarding his drop foot brace. (Exhibit 5). The x-rays were taken, and were unremarkable. (Exhibit 6). In the interim, Pamplin filed grievances.

On September 24, 2018, Pamplin filed a grievance, alleging that he had a flat yard restriction, and he was in pain walking to the chow hall and pill call. (Exhibit 7) In response, Nurse McCullah responded that WSCC is a barrier free yard, and he should kite to medical if he had difficulty walking. (Id.). He was moved several times, within WSCC, and in February, 2019, moved to Northern Nevada Correctional Center. (NNCC) (Exhibit 8). Nurse Lucas, similarly, responded to a grievance with much the same response. (Declaration of Rambur) Of note, Pamplin received his appliance on or about March 22, 2019. (Exhibit 9) Pamplin is not entitled to dictate his placement within the NDOC.

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). Summary judgment allows courts to avoid unnecessary trials when there is no dispute as to the facts. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The purpose of summary judgment is to isolate and then terminate claims that are factually unsupported. *Id.* at 323–24. A moving party is not required to disprove the non-moving party's claims. *Id.* Instead, the moving party is simply required to point out the absence of evidence supporting the non-moving party's claims. *Id.*

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does indeed exist. *Matsushita*, 475 U.S. at 586. Material facts are facts that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). The court should not consider disputes concerning irrelevant or unnecessary facts. *Anderson,* 477 U.S. at 248.

When attempting to establish the existence of a genuine issue of material fact, the opposing party is not permitted to merely rely upon its pleadings, but is required to tender evidence of specific facts in the form of affidavits, admissible evidence, or discovery materials. FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11; *Anderson,* 477 U.S. at 255. The opposing party is not required to establish a material issue of fact conclusively as it is enough that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987). The evidence of the non-moving party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita*, 475 U.S. at 587 (citations omitted); *Anderson*, 477 U.S. at 255.

Reasonable inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244–45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *T.W. Elec. Serv.*, 809 F.2d at 631. The court is concerned with establishing the existence of genuine issues, and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

The facts are only "viewed in the light most favorable to the nonmoving party if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586–87). The United States Supreme Court has stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

///

## IV.   ARGUMENT

### A.   Pamplin is Not Entitled to Recover on His Eighth Amendment Claim.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

To prove deliberate indifference, a plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; see also *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc).

Furthermore, to satisfy the deliberate indifference prong, a plaintiff must show "(a) purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. Prison officials who know of a substantial risk to an inmate's health and safety are liable only if they responded unreasonably to the risk, even if the harm ultimately was not averted. See *Farmer*, 511 U.S. at 844. What is reasonable depends on the circumstances, including the defendant's authority, capabilities, and resources. See *Peralta v. Dillard*, 744 F.3d 1076, 1084-85 (9th Cir. 2014) (en banc).

Furthermore, a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because

5

vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Therefore, a Plaintiff must allege facts sufficient to show that each particular defendant was deliberately indifferent and caused the harm; a defendant does not become liable for an Eighth Amendment violation merely because a co-worker or subordinate was deliberately indifferent. See *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).

In this case, neither Defendant Lucas nor Defendant McCullah were deliberately indifferent to Pamplin's alleged needs. Both were nurse grievance responders. Both responded to the grievances appropriately. Pamplin received medical treatment. (Exhibit 4). What is reasonable depends on the circumstances, including the defendant's authority, capabilities, and resources. See *Peralta v. Dillard*, 744 F.3d 1076, 1084-85 (9th Cir. 2014) (en banc). Neither Nurse had the authority to move Pamplin to a different situation. Neither Nurse had the authority to prescribe medication or appliances to Pamplin. Pamplin received medical care and appliances. (Exhibit 7, 8) There is no evidence of a purposeful failure to respond to Pamplin.

To prove deliberate indifference, a plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; see also *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). This Pamplin cannot do. Therefore, summary judgment is appropriate.

**B.    Pamplin is Not Entitled to Recover Under the Americans with Disabilities Act.**

Both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794 or Section 5, apply in the prison context. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Pursuant to the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A prison inmate states a colorable claim under both the ADA and RA if he alleges that he was "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997).

The Ninth Circuit has held that "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010); see also *Marlor v. Madison County*, 50 Fed. App'x 872, 874 (9th Cir. 2002) (stating that inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld due to discrimination on the basis of disability). "Courts hold that allowing prisoners to utilize the ADA and RA as causes of action for not receiving medical treatment is simply making 'an end run around the Eighth Amendment.'" *King v. Calderwood*, 2:13-cv- 02080-GMN-PAL, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister*, 3:11-cv-00351-LRH-VPC, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013)).

Pamplin, in this case is doing exactly that. He has made a claim for violation of the Eighth Amendment. And, he is attempting to make an end run around the Eighth Amendment by claiming a violation of the ADA for failing to give him medical treatment or a transfer. As there should be no merit to his claim for failing to get medical care under the ADA, similarly there is no merit to his claim he was denied a transfer. Neither of these Defendants have the authority to transfer Pamplin. Therefore, there can be no violation of the ADA.

**C.    Pamplin Has Not Properly Requested an Accommodation for Disability**.

The NDOC has established a regulation addressing the accommodation of prisoners with disabilities known as Administrative Regulation (AR) 658. (Exhibit 10) Pursuant to AR 658, an inmate seeking an accommodation must submit a DOC 2668 Inmate Disability Accommodation Request Form to the Health Service Administrator to initiate review of his or her request. (Id. at 7) This review includes an evaluation as to whether the inmate is disabled and whether the inmate is able to perform the activities at issue. (Id. at 7) The review also provides for a required "clinical evaluation of the inmate's alleged disability and/or impairment by a medical practitioner in order to validate the disability/accommodation

7

request." (Id) The evaluation "should be an interactive process between the health care professional and the inmate," and may include "a review of medical records, a medical examination and any other action deemed necessary by the medical practitioner." (Id). There is no evidence that Pamplin has followed the regulations in his ADA claim.

### D. Defendants Are Entitled to Qualified Immunity

This Court should hold Defendants are entitled to Qualified Immunity on all claims. It is a long-standing principle that governmental officials are shielded from civil liability under the doctrine of Qualified Immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The rule of qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" "Therefore, *regardless of whether the constitutional violation occurred,* the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial."

*Shroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995) (emphasis in original; internal citations omitted).

When conducting the Qualified Immunity Analysis, courts "ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B v. City of Sorona*, 769 F.3d 1005, 1022 (9th Cir. 2014) (internal citation omitted).

The second inquiry, whether the Constitutional right in question was clearly established, is an objective inquiry that turns on whether a reasonable official in the position of the defendant knew or should have known at the time of the events in question that his or her conduct was Constitutionally infirm. *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Lacey v. Maricopa Cty*, 693 F.3d 896, 915 (9th Cir. 2012). Only where a governmental official's belief as to the constitutionality of his or her conduct is "plainly incompetent" is Qualified Immunity unavailable. *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013) (per curiam). Governmental officials are entitled to high deference when making this determination, (*Anderson*, 483 U.S. at 640), requiring the Court to assess whether Qualified

Immunity is appropriate "in light of the specific context of the case." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (*quoting Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)). The Ninth Circuit recently clarified that Qualified Immunity applies when "their conduct does not violate clearly established Statutory or Constitutional rights of which a reasonable person would have known [.]" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019).

In determining "whether a [constitutional] right was clearly established," this Court is to survey the law within this Circuit and under Supreme Court precedent "at the time of the alleged act." *Perez v. United States*, 103 F.Supp. 3d 1180, 1208 (S. D. Cal. 2015) (quoting *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (2010) (citing *Bryan v. MacPherson*, 630 F.3d 805, 933 (9th Cir. 2010)). As such, "liability will not attach unless there exists a case where an officer acting under similar circumstances . . . was held to have violated the [Eighth Amendment.]" *Emmons*, 921 F.3d at 1174 (*citing White v. Pauly,* 137 U.S. 548, 551-52 (2017) (per curiam).[1] Although there need not be an identical case, "existing precedent must have placed the . . . question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Although Defendants do not concede they violated any constitutional right, to the extent this Court concludes otherwise, Defendants argues such a right was not clearly established at the time of the alleged violation. Defendants, in this action, responded to grievances. They responded appropriately at the time. They could not know, or believe, that denying a grievance, but sending Pamplin for further treatment could constitute a constitutional violation. Similarly, they could not have known that their failure, as Nurses, to transfer Pamplin to a different institution, an act they had no authority to conduct, would lead to a constitutional violation. Therefore, they are entitled to qualified immunity, at a minimum.

## V. CONCLUSION

Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment and Americans with Disabilities Act claims. First, Pamplin was treated appropriately and in accordance with the medical directives and standards of care. Second, Defendants were not Plaintiff's treating

---

[1] As recently as September 2020, the Ninth Circuit affirmed the importance of qualified immunity in the prison context. *See Cates v. Stroud*, 2020 WL 5742058 (9th Cir. 2020) (holding prison officials were entitled to qualified immunity for conducting a strip search of a prison visitor).

physician. Third, Plaintiff has not been harmed by the alleged lack of treatment. Fourth, Defendants did not have authority to transfer Pamplin. Finally, Defendants are entitled to Qualified Immunity. Therefore, it is respectfully requested that this Court grant the Defendants' Motion for Summary Judgment.

## VI.   EXHIBITS

1. Offender Information Summary
2. Health Classification and Restrictions – *filed under seal*
3. Medical Kite
4. Progress Notes – *filed under seal*
5. Physician's Orders – *filed under seal*
6. Right Hip and Lumbar Spine Reports – 2-1-2019 – *filed under seal*
7. Inmate Grievance Report
8. Historical Bed Assignments
9. OrthoPro Receipt – *filed under seal*
10. Administrative Regulation R 658

Declaration of Candis Rambur, R.N.

Declaration of Kerry McCullah, R.N.

Declaration of Kyle Olsen

Declaration of Jorja Powers

Declaration of Deborah Hernandez

Declaration of Gerard DiGioia

Declaration of Kirk Widmar

DATED this 16th day of November, 2021.

AARON D. FORD
Attorney General

By: /s/ *Douglas R. Rands*
DOUGLAS R. RANDS, Bar No. 3572
Senior Deputy Attorney General

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 16th day of November, 2021, I caused to be deposited for mailing a true and correct copy of the foregoing, **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**, to the following:

John Pamplin #74405
Warm Spring Correctional Center
P. O. Box 7007
Carson City, NV  89702

　　　　　　　　　　　　　　　　　　　/s/ Roberta W. Bibee
　　　　　　　　　　　　　　　　　　　An employee of the
　　　　　　　　　　　　　　　　　　　Office of the Attorney General