1

2

3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

4

5

6

7

8

9

JOHN DAVID PAMPLIN,

Plaintiff,

v.

C. LUCAS, *et al.*,

Defendants.

Case No. 3:20-CV-00111-CLB

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT[1]**

[ECF No. 42]

10      This case involves a civil rights action filed by Plaintiff John David Pamplin

11  ("Pamplin") against Defendants Kerry McCullah ("McCullah") and Candis Rambur

12  ("Rambur") (formerly known as Candis Lucas) (collectively referred to as "Defendants").

13  Currently pending before the Court is Defendants' motion for summary judgment. (ECF

14  Nos. 42, 44.)[2] Pamplin opposed the motion, (ECF No. 50), and Defendants replied. (ECF

15  No. 52.) For the reasons stated below, Defendants' motion for summary judgment, (ECF

16  No. 42), is granted.

17  **I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

18      Pamplin is an inmate in the custody of the Nevada Department of Corrections

19  ("NDOC") and is currently incarcerated at the Warm Springs Correctional Center

20  ("WSCC"). (ECF No. 3.) Defendants McCullah and Rambur were employed with the

21  NDOC at the time of Pamplin's complaint. (ECF No. 42.)  On February 18, 2020, Pamplin

22  filed an application to proceed *in forma pauperis* and a complaint pursuant to 42 U.S.C.

23  § 1983. (ECF Nos. 1, 3.)

24      Pamplin's complaint alleges that on September 14, 2018, "Administration"

25  classified Pamplin to WSCC and housed him on a hill in Unit 4B North. (ECF No. 3 at 3.)

26

27

[1]     The parties have voluntarily consented to have this case referred to the
undersigned to conduct all proceedings and entry of a final judgment in accordance with
28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 15.)

28

[2]     ECF No. 44 consists of Pamplin's medical records filed under seal.

"Administration and all the defendants" had personal knowledge of Pamplin's walking disabilities. (*Id.*) The "special doctor" ordered flat yard restriction. (*Id.*) "The defendants ignored all my crys (sic) for help and left me to suffer." (*Id.*)

Claim 1 alleges the following. "Each Defendant had knowledge of the steep hill which OMD classified me to this prison, knowing I'm a disable with drop foot, right hip and lower back injuries." (*Id.* at 4.) Walking up and down a steep hill has caused great pain and suffering. (*Id.*) "The defendant" violated Pamplin's "flat yard restriction" by placing him on the steep hill. (*Id.*) Walking the steep hill 10-14 times per day for matters such as chow hall, pill call, church, and picking up legal mail has made Pamplin's condition worse. (*Id.*) "The defendant" states that it is a "barrier free yard," but Warms Springs Unit 4B is not handicap accessible. (*Id.*) Pamplin concludes that his rights under Title II of the Americans with Disabilities Act ("ADA") have been violated. (*Id.*)

Claim 2 alleges the following. Rambur and McCullah "had personal knowledge" of the hill and failed to address the pain and suffering caused by the daily walking up and down the hill, stating that it is a barrier free yard when clearly there is a steep hill. (*Id.* at 5, 12-17.) They deliberately placed Pamplin in Unit 4R, knowing that Pamplin would have to walk the steep hill daily and hurt his injuries even more. (*Id.*) Months of walking up and down the steep hill have caused serious injuries to his lower back and right hip. (*Id.*) "The defendant ignored all my crys (sic) for help." (*Id.*) Warm Springs is not a handicap accessible yard. (*Id.*) Pamplin concludes that the "defendant's refusal" to move Pamplin to a different yard or flat yard has amounted to deliberate indifference to an unreasonable risk of harm. (*Id.*)

Claim 3 alleges the following. "Each defendant had personal knowledge" of Pamplin's flat yard doctor-ordered restrictions, but deliberately placed Pamplin on the steep hill to cause Pamplin "pain and suffering and more injuries to his drop foot issue, his right hip, and his lower back injuries." (*Id.* at 6.) Even after grieving the issue, "the defendants fail to help me stating or lying saying it a 'barrier free yard.'" (*Id.*) Warm Springs is not handicap accessible. "These defendants interfered with strict doctors['] orders." (*Id.*)

Pamplin alleges that this violated his Eighth Amendment right against cruel and unusual punishment. (*Id.*)

The complaint was screened by the District Court pursuant to 28 U.S.C. § 1915A, and Pamplin was permitted to proceed on violations of the ADA and an Eighth Amendment deliberate indifference claim against Defendants. (ECF No. 2.) The Court found that Pamplin stated an ADA claim, as the complaint adequately alleged that Defendants deliberately refused to accommodate Pamplin's disability-related mobility needs. (*Id.* at 6.) Additionally, the Court found that Pamplin stated a colorable Eighth Amendment claim against Defendants, because liberally construed, the complaint alleged facts sufficient to show Defendants knew that Pamplin had a drop foot and hip and back injuries that caused Pamplin pain when he had to climb up and down the hill and Defendants deliberately chose not to transfer Pamplin to address the problem and baselessly claimed that the yard was "barrier free," causing Pamplin prolonged pain. (*Id.* at 7-8.)

On November 16, 2021, Defendants filed the instant motion for summary judgment arguing: (1) Pamplin was treated appropriately and in accordance with medical directives and standards of care; (2) Defendants were not Pamplin's treating physician; (3) Pamplin has not been harmed by the alleged lack of treatment; (4) Defendants did not have authority to transfer Pamplin; (5) Pamplin is not entitled to recover under the ADA; (6) Pamplin has not properly requested an accommodation for disability; and (7) Defendants are entitled to qualified immunity. (ECF No. 42) Pamplin opposed the motion, (ECF No. 50), and Defendants replied. (ECF No. 52.)

## II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477

U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz*

4

*Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923

(9th Cir. 2004).

Upon the parties meeting their respective burdens for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III.    DISCUSSION

### A.    Eighth Amendment – Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or

6

1   treatment; the presence of a medical condition that significantly affects an individual's

2   daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066

3   (internal quotation omitted).

4           Second, the subjective element considers the defendant's state of mind, the extent

5   of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately

6   indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally

7   interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002)

8   (internal quotation omitted). However, a prison official may only be held liable if they

9   "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v.*

10  *Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore

11  have actual knowledge from which they can infer that a substantial risk of harm exists,

12  and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent

13  failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–

14  06. Rather, the standard lies "somewhere between the poles of negligence at one end

15  and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

16  Accordingly, the defendants' conduct must consist of "more than ordinary lack of due

17  care." *Id.* at 835 (internal quotation omitted).

18          **1.    Analysis**

19          Starting with the objective element, Defendants do not seem to dispute that

20  Pamplin's medical issues are serious. However, Defendants argue summary judgment

21  should be granted because Pamplin cannot establish the second, subjective element of

22  his claim. Specifically, Defendants argue they were not deliberately indifferent to

23  Pamplin's condition. Under the subjective element, there must be some evidence to

24  create an issue of fact as to whether the prison official being sued knew of, and

25  deliberately disregarded the risk to Pamplin's safety. *Farmer*, 511 U.S. at 837. "Mere

26  negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th

27  Cir. 1998). Moreover, this requires Pamplin to "demonstrate that the defendants' actions

28  were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d

1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants submitted authenticated evidence and sworn declarations which affirmatively show the following: On September 12, 2018, Pamplin was classified, pursuant to a settlement agreement in another civil rights action, to be transferred from Ely State Prison ("ESP") to WSCC. (ECF No. 42-1.) Prior to his move, on February 3, 2018 and March 5, 2018, respectively, Pamplin was classified by medical to be restricted to a barrier free institution—noting specifically that he would not be housed at the High Desert State Prison ("HDSP"). (ECF No. 44-1 at 2-3.) Upon arrival at WSCC, on September 14, 2018, Pamplin filed an informal grievance, alleging that he had a flat yard restriction, and he was in pain walking to the chow hall and pill call. (ECF No. 42-3 at 3-4.) In response, McCullah responded that WSCC is a barrier free institution, and he should kite to medical if he had difficulty walking. (*Id.* at 2.) On September 18, 2018, Pamplin submitted a kite requesting transfer to a flat yard. (ECF No. 42-2.) In his kite, he specified that the Offender Management Division ("OMD") classified him to WSCC. (*Id.*) On November 19, 2018, Rambur responded to Pamplin's first level grievance, stating that WSCC is considered a barrier free yard and Pamplin would be scheduled with a provider to discuss classification and his need for a new AFO (brace for his drop foot). (ECF No. 42-3 at 5.)

On January 24, 2019, Pamplin was seen by medical in response to his kite. (ECF No. 44-2.) Medication, x-rays, and an evaluation with Ortho-Pro regarding his drop foot brace were ordered. (ECF Nos. 44-2, 44-3.) The x-rays were taken and were unremarkable. (ECF No. 44-4.) Also at that medical appointment, Pamplin was reclassified to a flat yard at either Northern Nevada Correctional Center ("NNCC") or Lovelock Correctional Center ("LCC"). (ECF Nos. 44-1 at 4, 44-2 at 2.) Pamplin was moved several times within WSCC from September 2018 until February 15, 2019, when he was transferred to NNCC. (ECF No. 42-4.)

1      The response to Pamplin's second level grievance stated Pamplin was recently
2  seen at WSCC, a request for a new foot brace was approved by the Utilization Review
3  Panel, and Pamplin would be scheduled to see Ortho-Pro. (ECF No. 42-3 at 7.) Pamplin
4  received the drop foot brace on or about March 22, 2019. (ECF No. 44-5.)

5      Defendants—nurses who responded to Pamplin's grievances—had no authority to
6  transfer Pamplin to a flat yard or prescribe medication/medical devices. (ECF Nos. 42-6,
7  42-7, 42-9.) OMD determines the placement of inmates within the NDOC. (ECF Nos. 42-
8  8, 42-9.)

9      Defendants have submitted evidence that establishes Pamplin was ultimately
10  moved to a flat yard, received medical treatment, Defendants had no authority to
11  move/transfer Pamplin, and no authority to prescribe him medication/medical devices.
12  Thus, Defendants have met their initial burden on summary judgment by showing the
13  absence of a genuine issue of material fact as to the deliberate indifference claim. *See*
14  *Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Pamplin to produce evidence
15  that demonstrates an issue of fact exists as to whether Defendants were deliberately
16  indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

17      In Pamplin's response to the motion for summary judgment, Pamplin reiterates that
18  he submitted kites and grievances to be moved to another yard, yet he provides no
19  evidence that Defendants were aware of these other kites or grievances. (ECF No. 50.)
20  Aside from their responses to grievances, Defendants had no other involvement with
21  Pamplin and had no authority to transfer him and Pamplin does not present any evidence
22  to the contrary. Pamplin has failed to meet his burden on summary judgment to establish
23  that prison officials were deliberately indifferent to his medical needs as he failed to come
24  forward with any evidence to create an issue of fact as to whether Defendants deliberately
25  denied, delayed, or intentionally interfered with medical treatment. *See Hallett*, 296 F.3d
26  at 744.

27      Accordingly, Defendants' motion for summary judgment is granted as to the Eighth
28  Amendment deliberate indifference claim.

**B.    ADA**

The ADA, 42 U.S.C. § 12132, applies in the prison context. *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1063 (9th Cir. 2010). Pursuant to the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that a prisoner may state an ADA claim based on the "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *United States v. Georgia*, 546 U.S. 151, 157 (2006).

However, the Ninth Circuit has held that "the ADA prohibits discrimination *because of* disability, not inadequate treatment *for* disability." *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added); *see also Marlor v. Madison County*, 50 Fed. App'x 872, 874 (9th Cir. 2002) (stating that inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld due to discrimination on the basis of disability). "Courts hold that allowing prisoners to utilize the ADA and RA as causes of action for not receiving medical treatment is simply making 'an end run around the Eighth Amendment.'" *King v. Calderwood*, 2:13-cv-02080-GMN-PAL, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister,* 3:11-cv-00351-LRH-VPC, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013)).

Pamplin's response states that he was not "treated appropriately" and "suffered great pain … due to the lack or [denial] of treatment by these Defendants." (ECF No. 50 at 8.) Pamplin also asserts that the Defendants could have transferred Pamplin and they "fail[ed] to provide medical [and] for that reason they violated ADA." (*Id.* at 6.) Thus, Pamplin's ADA claim is based on his allegation that Defendants failed to give him adequate medical treatment—including transfer—for his disability. Pamplin's ADA claim is simply making "an end run around the Eighth Amendment". As discussed above, Defendants were not deliberately indifferent to his serious medical needs, did not have

1   the authority to transfer him, and Pamplin cannot use the ADA as an alternative basis to
2   recover damages.
3        Accordingly, Defendants' motion for summary judgment is granted as to the ADA
4   claim.[3]
5   **IV.   CONCLUSION**
6        For good cause appearing, and for the reasons stated above, **IT IS HEREBY**
7   **ORDERED** that Defendants' motion for summary judgment, (ECF No. 42), is **GRANTED**;
8   and,
9        **IT IS FURTHER ORDERED** that the Clerk of the Court **CLOSE** this case and
10  **ENTER JUDGMENT** accordingly.
11       **DATED**:  February 16, 2022  .

      **UNITED STATES MAGISTRATE JUDGE**

---

[3]      Because the Court finds that Pamplin's claims fail on the merits, and is granting
the motion in its entirety, the Court need not address the other arguments or defenses
presented in Defendants' motion.